# Food and Drug Administration Establishment Inspection Report

**Date Assigned:** 06/28/2018  **Inspection Start Date:** 08/06/2018  **Inspection End Date:** 08/14/2018

**Firm Name & Address:** Immunomedics, Inc., 300 The American Rd Morris Plains, NJ 07950-2460 US

**Firm Mailing Address:** 300 American Rd, Morris Plains, NJ 07950-2460 United States

**FEI:** 1000526871  **JD/TA:** 35  **County:** MORRIS  **Est Size:** 0 - 24,999

**Phone:** (973)605-8200  **District:** CDER-DIA  **Profiled:** Yes

**Conveyance Type:**  **% Interstate:**  **Inspectional Responsibility:** Field

## Endorsement

This pre-license inspection of Immunomedics Inc. (b) (4) intermediate manufacturing site was conducted from August 6 – 14, 2018 following a request by the Division of Microbiology Assessment, Branch IV (DMA/OPF/OPQ//CDER) and Division of Inspectional Assessment, Branch 1 (DIA, OPF/OPQ). The inspection was conducted in support of (b) (4) for (b) (4).

The inspection covered (b) (4) intermediate manufacturing, testing laboratories, utilities, and warehouse. The inspection was system-based and covered Quality, Facility and Equipment, Production, Material, and Laboratory systems.

A thirteen-item Form FDA 483 was issued to the firm at the close of the inspection on August 14, 2018 with the following observation:

1. The quality control unit lacks authority to investigate critical deviations of approved procedures.

2. There is no assurance that samples and batch records from the (b) (4) intermediate process validation and commercial batches manufactured prior to February 2018 were not impacted by the data integrity breach.

3. Retesting procedure for the (b) (4) intermediate is inadequate.

4. The raw material sampling and testing program is inadequate.

5. The firm lacks procedures for inventory audit trail and for tracking and reconciliation of raw materials used to manufacture the (b) (4) (b) (4) intermediate.

6. Differential pressure between GMP areas of different area classification is not adequately maintained and monitored.

7. The design of the facility is inadequate in that no drains are present in the purification rooms. In addition, there is no SOP for liquid containment and disposal after a catastrophic spill. All process streams downstream the (b) (4) Bioreactor are held in disposable bags.

8. There is no signed Quality Agreement between (b) (4) and Immunomedics Inc.

9. No procedure is in place for (b) (4) intermediate (b) (4) trending of results.

10. Deviation investigations and CAPA implementations are inadequate.

11. Deviation initiation and closing times are inadequate.

12. Cleaning of downstream equipment, including (b) (4) and product-contact parts of the (b) (4) is not validated or verified.

13. The procedure to prevent contamination of the (b) (4) intermediate after (b) (4) is inadequate for a product stored 2 to 8°C for up to (b) (4)

Initial Recommendation: Withhold

**Date:** 02/06/2019  **Page:** 1 of 6

**Establishment Inspection Report**  Immunomedics, Inc., 300 The American Road, Morris Plains, NJ FEI # 1000526871
Inspection Dates: August 6th – August 14th, 2018
RC, MD, GB, RS

prior to the PPQ campaign, which was initiated August 1, 2017. The firm refused to provide access to the interview transcripts or any other information regarding the DIB. Bioburden data suggest that in-process bioburden (b)(4) results were manipulated during the PPQ campaign (refer to observation 2). In addition, Deviation report 18-009U (Exhibit RC-1, Conclusion 4) initiated on January 18, 2018 indicates that *"false low results are likely present in the historical product-related bioburden tests conducted"*. Process validation report (MF-0119-PV-01-R; Attachment RC-3) that is specific to the PPQ batches refers to the lack of (b)(4) integrity test.

2. The operations impacted by the DIB: The letter submitted by the firm to FDA on (b)(4) (Attachment RC-1), cites as the only operation impacted by the DIB the (b)(4) of bioburden samples but did not disclose the lack of (b)(4) integrity testing that was also discovered in February 2018 (Exhibit RC-17, Deviation 18-053U). An update on the investigation was submitted to the FDA on (b)(4) (Attachment RC-2) also failed to disclose the lack of (b)(4) integrity testing. To my knowledge, no additional letters were submitted to FDA regarding the lack of (b)(4) integrity testing and the only mention of the issue is a note at the end of the process validation report (MF-0119-PV-01-R, Attachment RC-3) included in the (b)(4) When I reviewed Deviation 18-053U (Exhibit RC-17) during the inspection, I asked Dr. Rosenberg whether that was part of the DIB and he confirmed it but did not disclose any additional operation impacted by the DIB. Later, I asked Dr. Rosenberg if there was any other operation impacted by the DIB and he added the backdating of the batch records. I asked him if he could put the operations impacted by the DIB in writing and he said that those were the only three operations (see bullets above).

In summary, no verbal information could be verified during the inspection because the firm refused to provide information as all the documentation was protected under attorney/client privilege. The firm was reluctant to provide any writing confirmation of the information provided verbally. We were not able to verify which operations were impacted by the DIB nor the batches impacted by the DIB. The inspection team asked the firm to provide a list of all Process(b)(4) lots manufactured up to the inspection date. The firm provided the Process(b)(4) lot History (Exhibit RC-21), however, we later found that the list was incomplete because not every vial thaw resulted in a unique lot number, underestimating the rate of successful batches (for example, vial 201 was out of specification for cell viability, the culture was discarded and vial 202 was thawed; both vials thaws had the same lot number resulting in an underestimation of failed batches; Exhibit RC-20).

**Management's Response:**
*(This section was written by RC)*
I had multiple conversations with Dr. Rosenberg regarding the assessment of the DIB. I indicated that without any documentation, I could not assess the impact of the DIB.

41

**Establishment Inspection Report**               Immunomedics, Inc., 300 The American Road,
                                                               Morris Plains, NJ FEI # 1000526871
                                                          Inspection Dates: August 6th – August 14th, 2018
                                                                                          RC, MD, GB, RS

On August 9, 2018 Dr. Rosenberg handed me a document and indicated that it was the information provided to the lawyers. However, the document was dated August 7, 2018 and was a written version of the verbal information already communicated. I indicated that to Dr. Rosenberg and asked him if I could keep a copy of the document. Dr. Rosenberg indicated that he preferred to keep the copy.

The firm indicated at the inspection close-out that they understood the seriousness of the observation and they would respond to the FDA.

### Observation 2:

There is no assurance that samples and batch records from the (b)(4) intermediate process validation and commercial batches manufactured prior to February 2018 were not impacted by the data integrity breach. Interviews by Immunomedics to personnel involved in the event were conducted under attorney/client privilege and no additional documentation is available, therefore no assessment could be made during the prelicense inspection in support of (b)(4)

### Supporting Evidence and Relevance:

(*This section was written by RC*)

During the pre-license inspection, the inspection team tried to assess the scope of the DIB that was discovered in January 2018. As indicated above, the firm refused to provide documentation related to their investigation of the event because it was protected. Consequently, there is no assurance that the DIB did not impact the PPQ or commercial batches or that the DIB was resolved. The DIB included backdating of the batch records, false information in the batch record regarding the (b)(4) integrity test, and (b)(4) of bioburden samples prior to handle them to the QC lab.

Dr. Rosenberg indicated that any issues related to the DIB has stopped prior to the PPQ campaign but we could not verify his claim. However, the following data suggests that the DIB was ongoing until its discovery in January 2018:

1. Review of historical bioburden data (Exhibit RC-2) shows that for multiple samples, bioburden was recovered from the (b)(4) but no bioburden was recovered from the in-process (b)(4) For example, during manufacturing of batch (b)(4) (b)(4) a sample collected on October 30, 2017 from the (b)(4) (b)(4) resulted in high bioburden recovery (TNTC), however, the (b)(4) collected from the same (b)(4) resulted in 0 CFU/100 mL. No in-process (b)(4) is conducted between the (b)(4) and the (b)(4) collection. The historical data show that prior to (b)(4) batch, bioburden had been recovered consistently from the (b)(4), but no bioburden was even recovered from the (b)(4) in the applicable batches, for example:

42

**Establishment Inspection Report**   Immunomedics, Inc., 300 The American Road,
Morris Plains, NJ FEI # 1000526871
Inspection Dates: August 6th – August 14th, 2018
RC, MD, GB, RS

   a. (b)(4) sample collected on October 3, 2017: (b)(4) bioburden was 35 CFU/100 mL; (b)(4) collected the same day did not recover bioburden
   b. (b)(4) sample collected on October 10, 2017: (b)(4) bioburden was 186 CFU/100 mL; (b)(4) collected the same day did not recover bioburden
   c. (b)(4) sample collected on October 17, 2017: (b)(4) bioburden was 120 CFU/100 mL; (b)(4) collected the same day did not recover bioburden
   d. (b)(4) sample collected on October 24, 2017: (b)(4) bioburden was 29 CFU/100 mL; (b)(4) collected the same day did not recover bioburden
   e. (b)(4) sample collected on October 31, 2017: (b)(4) bioburden was TNTC; (b)(4) collected the same day did not recovered bioburden
   f. Post-(b)(4) sample collected on November 28, 2017: (b)(4) bioburden was 6 CFU/100 mL; (b)(4) collected the same day did not recover bioburden
   g. Post-(b)(4) sample collected on December 2, 2017: (b)(4) bioburden was 103 CFU/100 mL; (b)(4) collected the same day did not recover bioburden
   h. Post-(b)(4) sample collected on December 12, 2018: (b)(4) bioburden was 38 CFU/100 mL; (b)(4) collected the same day did not recover bioburden

The data presented above does not include bioburden recovered from the (b)(4) prior to sanitization or bioburden recovered from the (b)(4) because bioburden from those steps is expected to lower considerably after sanitization. When I discuss the bioburden results with Edmund Rossi, VP Process and Manufacturing Sciences he indicated that the bioburden from the (b)(4) did not show in the (b)(4) because It was eliminated during the (b)(4) washes. Although reduction in the bioburden recovered from the (b)(4) is expected due during the (b)(4) wash process, the data above show that bioburden was constantly present in the (b)(4) therefore it was not completely removed during the washes and should have been recovered from the (b)(4) However, bioburden was not recovered from the (b)(4) samples.

2. A similar pattern is found from samples collected from another (b)(4) For example, (b)(4) sample collected on October 12, 2017: (b)(4) bioburden was 517 CFU/100 mL; (b)(4) collected the same day did not recover bioburden.

43

**Establishment Inspection Report**     Immunomedics, Inc., 300 The American Road,
Morris Plains, NJ FEI # 1000526871
Inspection Dates: August 6th – August 14th, 2018
RC, MD, GB, RS

3. Deviation report 18-009U (Exhibit RC-1, Conclusion 4) initiated on January 18, 2018 indicates that *"false low results are likely present in the historical product-related bioburden tests conducted."* There is no mention of false low results impacting only batches prior to the PPQ campaign in August 2017.
4. It is not clear why if the DIB was conducted to avoid non-conformance results, the operators would have stopped manipulating the samples immediately prior to the PPQ campaign. In fact, the historical bioburden results show some bioburden recovery from in-process samples of clinical batches (samples taken in June 2017) but all in-process bioburden samples collected during the PPQ campaign and until December 2017 have bioburden results ≤ 1 CFU/100 mL, consistent with sample manipulation during testing.
5. Process validation report (MF-0119-PV-01-R; Attachment RC-3) specific to the PPQ batches, includes information regarding the lack of (b) (4) integrity test

In summary, the information provided above suggests that the DIB was ongoing during the PPQ campaign and possibly during the commercial campaign. However, the firm's management (Attachment RC-1) and Dr. Rosenberg indicated several times throughout the course of the inspection that data integrity had stopped before the PPQ campaign. There is no information to support this claim. In addition, there is no information to assess if the DIB involved additional data manipulation or batch record falsification as the firm refused to provide documentation regarding the DIB. The inspection team was not able to verify the verbal information provided by the firm's management.

**Management's Response:**
(*This section was written by RC*)
The firm indicated at the inspection close-out that they understood the seriousness of the observation and they would respond to the FDA.

**Observation 3:**
Retesting procedure for the (b) (4) intermediate is inadequate. Specifically:
  a. SOP-0162 "Out of Specification Investigations" indicates that *"if the company believes there is possibility the laboratory test did have error, and the error was undetected, then the company may wish to perform a retest."* OOS Investigation report 18-001 shows that routine retesting was performed due to an initial OOS result.
  b. SOP-0162 allows for retesting of microbiology samples. An OOS result for the (b) (4) in-process bioburden sample was recorded on 12/23/2017. A retest was conducted using a retain sample on 1/5/2018 and the results on 1/10/2018 were OOS (OOS 18-001). Initiation of a non-conformance report (NCR 18-009U) was delayed until the results of the retest were reported on 1/10/2018.

44